UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AWAAN WOODS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-CV-4937 ) |
| JENNIFER LEE, TONYA JACOBS, BRYANT CHUA, CECILIA CARDONA, ARMOR CORRECTIONAL HEALTH SERVICES, INC., and LAKE COUNTY, ILLINOIS, | ) Hon. Marvin E. Aspen ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Now before us is Defendant Lake County's Rule 12(b)(6) Motion to Dismiss Count III[1] of Plaintiff Awaan Woods' Complaint for failure to state a claim upon which relief can be granted. (Compl. (Dkt. No. 1); Mot. (Dkt. No. 14).) This is the only claim directed against Lake County. The other two counts are directed at the individual defendants (Count I) and Armor Correctional Health Services, Inc. (Count II). (Compl. at 5, 7.) Those defendants did not move to dismiss. For the reasons set forth below, we grant Lake County's motion to dismiss.

## BACKGROUND

For the purposes of a motion to dismiss, we accept all well-pleaded factual allegations as true and draw all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005).

---

[1] Woods' Complaint labels two claims as "Count I." (Compl. at 5, 9.) We refer to the second "Count I" as "Count III" because it is pleaded third. (Compl. at 9.)

Woods alleges that he complained of testicular pain to Armor and its staff while incarcerated[2] by Lake County on July 24, 2017 (Compl. ¶¶ 15–17) but had to wait until July 28, 2017 for a physician to come on-site to provide medical care. (*Id.* ¶¶ 14–23.) During those four days, the individual defendants made no attempt to examine or treat Woods' medical condition or send him to the onsite infirmary or to an off-site facility for treatment. (*Id.* ¶¶ 20–21.) Four days later, July 28, 2017, Woods was sent to Vista East Medical Center for emergency treatment. (*Id.* ¶ 4.) Woods claims that he would not have lost his left testicle had the individual defendants acted consistent with the generally accepted medical and correctional standards of care. (*Id.* ¶ 23.)

Lake County granted Armor the exclusive right to provide medical health services to the inmates at the Lake County Jail for a period of two years commencing on June 20, 2016. (*Id.* ¶ 25.) That contract was for a sum of $2,640,270.00 and provided for a list of staffing positions and provided for a medical doctor for six hours per week. (*Id.* ¶¶ 24–26.) Woods contends that at the time of entering into the contract, Lake County knew or should have known that medical needs of the inmate population at the Lake County Jail required an on-site medical doctor for more than six hours a week. (*Id.* ¶ 27.) Thus, Woods claims that Lake County had deliberate indifference to Woods' serious medical condition in violation of the constitution (42 U.S.C. § 1983) by having failed to provide adequate funding to meet the medical needs of inmates and by requiring Armor staff postpone medical treatment for inmates until the physician's regularly scheduled visit once every seven days. (Compl. ¶ 44.) Woods alleges that

---

[2] On July 15, 2017, Woods was arrested by the Waukegan Police Department for retail theft in alleged violation of 720 ILCS 5/16–25(a)(1). (Compl. ¶ 12.) He was eventually transported to Lake County Jail on July 17, 2017. (Compl. ¶ 13.) Woods was held there as a pre-trial detainee until judgment was entered against him on July 26, 2017. (Compl. ¶ 13.)

Lake County's acts and/or omissions caused him to suffer both physical and psychological injuries, including but not limited to loss of his left testical, pain, humiliation, and suffering. (*Id.* ¶ 45.)

## LEGAL STANDARD

Lake County's motion to dismiss for failure to state a claim upon which can be granted is governed by Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief sufficient to provide defendant with fair notice of the claim and the basis for it. *See* Fed. R. Civ. P. 8; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).[3] "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (*quoting Iqbal*, 556 U.S. at 678). In applying this standard, we accept all well-

---

[3] Contrary to Plaintiff's suggestion in the response to the motion to dismiss, the plaintiff no longer can skate by pleading the "bare minimum facts necessary." (Pl.'s Resp. to Def. Mot. to Dismiss ("Pl. Resp.") (Dkt. No. 22.) at 3.) Plaintiff's citations to Seventh Circuit cases from the *Conley* notice pleading era are unhelpful. *See Twombly*, 550 U.S. at 555.

pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. *See Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## ANALYSIS

Lake County's motion to dismiss is premised on two foundational arguments. First, Lake County argues that Count III must be dismissed for having failed to identify any express policy that, when enforced, caused Woods to suffer a constitutional deprivation. (Mot. at 5.) Second, it contends that the Count III should be dismissed because Lake County has no final policy-making authority over the relevant jail as a matter of law. (Mot. at 14.) We address these points in turn.

### A. Policy or Practice

Plaintiffs may recover against municipalities under 42 U.S.C. § 1983 for claims alleging a "policy or custom" of constitutional violations on the part of the city. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997).[4] Direct liability is only appropriate where the municipality's *deliberate* conduct was the "moving force" behind the constitutional injury the plaintiff alleges. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 384 (7th Cir. 2017) (en banc) (citing *Brown*, 520 U.S. at 400, 404, 117 S. Ct. at 1386, 1388.) "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Brown,*

---

[4] We note that Plaintiff cites *Sledd v. Lindsey* for the proposition that a district court should be weary of jumping the gun to dismiss a *Monell* claim. 102 F.3d 282 (7th Cir. 1996). This case was abrogated in light of *Twombly* and *Iqbal*. *See Bohannon v. City of Milwaukee*, 998 F. Supp. 2d 736, 741–42 (E.D. Wisc. 2014) ("Prior to the issuance of the *Iqbal* and *Twombly* decisions, it may very well have been possible to state only 'boilerplate allegations,' and survive dismissal . . . . But, in the time since, the Seventh Circuit has not returned to such a liberal pleading standard." (citing *McCauley v. City of Chicago*, 671 F.3d 611, 615, 617–18 (7th Cir. 2011))).

520 U.S. at 406–07, 117 S. Ct. at 1389 (emphasis in original). "The central question is always whether an official policy, however expressed (and we have no reason to think that the list in *Monell* is exclusive), caused the constitutional deprivation." *Glisson*, 849 F.3d at 379. "It does not matter if the policy was duly enacted or written down, nor does it matter if the policy counsels aggressive intervention into a particular matter or a hands-off approach." *Id.* Continued adherence to an approach that municipal employees "know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their actions . . . ." *Id.* at 386 (quoting *Brown*, 520 U.S. at 407–408, 117 S. Ct. 1382). The policy requirement is also "certainly met when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Brown*, 520 U.S. at 417, 117 S. Ct. at 1395 (Souter, J., dissenting); *Glisson*, 849 F.3d at 385 (Sykes, J., dissenting). In the context of inmate healthcare, "[t]here is no magic number of injuries that must occur before its failure to act can be considered deliberately indifferent." *Glisson*, 849 F.3d at 382. Instead, *Glisson* suggests:

> The key is whether there is a conscious decision not to take action. That can be proven in a number of ways, including but not limited to repeated actions. A single memo or decision showing that the choice not to act is deliberate could also be enough. The critical question under Monell remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?

*Id.* at 381.

Even if the plaintiff can satisfy the policy or custom element of a *Monell* claim, "[t]he plaintiff also must adduce evidence on two additional elements: (1) institutional fault, which in this context means the municipality's deliberate indifference to a known or obvious risk that its policy will likely lead to constitutional violations; and (2) causation." *Glisson,* 849 F.3d at 383 (Sykes, J., dissenting). In *Glisson*, the Seventh Circuit pointed to the lack of protocol for

5

chronically ill inmates in allowing the plaintiff's *Monell* claim to survive. *Id*. at 382 (Wood, C.J.). In contrast, the court affirmed a jury verdict against Cook County where the plaintiff established a long pattern of failure to collect medical forms on a daily basis. *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303–04 (7th Cir. 2010). Finally, the plaintiff must establish that "County policymakers were 'deliberately indifferent as to [the] known or obvious consequences'" of its harmful custom or practice. *Id.* a 303 (quoting *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.*

Unlike *Glisson*, Plaintiffs do not point to a particular decision or failure that led to Wood's injury. Instead, Plaintiffs claim they can plead merely conclusory statements, most of which appear to lay primary blame on Armor. (Pl. Reply at 7; Compl. ¶ 40.) Woods' claim that Lake County failed to implement policies that facilitated proper treatment are conclusory and do not evince the kind of pattern established in *Thomas*. (*See id.*) Unlike *Thomas*, where numerous specific attempts to secure medical care were pleaded, and a pattern of county jail officials ignored those complaints, here the contractor arguably misunderstood the seriousness of Woods' injury, or adopted a "sick list" policy that was too slow to respond to emergent medical situations. *See also Thomas*, 604 F.3d at 307 (reversing verdict against Sheriff where causal connection between understaffing and plaintiff's injury too attenuated). Neither of these theories of causation implicate Lake County, since the contract between Armor and Lake County gave Armor flexibility to increase medical staffing as needed. (Def. Reply at 4); *Thomas*, 604 F.3d at 304. Although Woods implicitly claims the medical policy is too inflexible, he pleads no facts tending to support this, and in fact attached the Armor-Lake County contract to his pleadings that suggests Armor did have flexibility in medical staffing decisions. (Pl. Reply Ex. 3 (Dkt. No. 22–

6

3) at 4–5.) This contract states that "Armor reserves the right to provide temporary additional health care staffing . . . beyond the positions noted . . ." and gave Armor the right to collect the cost of these staffing increases from the county. (*Id.* at 5 ¶¶ 1-2.) If Plaintiff has a theory of causation given the actual terms of the contract, that causal connection is not clear or spelled out in the complaint. Specifically, Plaintiff would need to show how Lake County's choice to delegate staffing to Armor was a *deliberate* choice to forgo emergent care. These pleadings do not establish Lake County has a policy of non-treatment or that the County evinced deliberate indifference to a known risk of harm to prisoners under its care.

### B. Legal Responsibility of County vs. Sheriff

Lake County argues it does not control the county jail's policies, so the Sheriff, not the county, is the only proper defendant for a *Monell* claim about jail policies. Woods replies that Lake County has significant authority over medical claims, including policies for payment on claims the Plaintiff believes resulted in late treatment here. Woods is correct that Lake County controls the funding for the jail, but incorrect as to who controls *execution* of jail policy, which requires dismissal of Lake County as a defendant.

Illinois law is clear: the sheriff is the warden of the jail of the county, has custody of all prisoners in the jail, appoints the superintendent of the jail, is responsible for hiring and training all personnel necessary to operate and maintain the jail and develops all diagnostic, classification, and rehabilitation programs at the jail. *Moy v. Cty. of Cook*, 159 Ill.2d 519, 526–27, 640 N.E.2d 926, 929 (Ill. 1994). Although the County provides funding, it is the Sheriff that controls the allegations about inadequate staffing, since the County Board is required to appropriate and provide funds necessary for the costs of the Sheriff in performance of his duties. *Ramirez v. Dart*, No. 08 C 6098, 2010 WL 1325618, at *2 (N.D. Ill. Mar. 30, 2010); *Riley v. Cty.*

of Cook, 682 F. Supp. 2d 856, 860 (N.D. Ill. 2010); *DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 976 (7th Cir. 2000) ("Illinois sheriffs have final policymaking authority over jail operations."). The Sheriff is not subject to the control of the county. *Ryan v. Cty. of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995); *Potochney v. Doe*, No. 02 C 1484, 2002 WL 31628214, at *2 n.3 (N.D. Ill. Nov. 21, 2002). Nevertheless, "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity." *Carver v. Sheriff of LaSalle Cty.*, 203 Ill.2d 497, 499, 787 N.E.2d 127, 129 (Ill. 2003).

As these preceding cases held, Lake County does not have final policymaking authority over the policies Woods claims caused him unconstitutional harm. Instead, the Sheriff has the authority to make staffing and training determinations of the kind Woods argues led to his failure to receive timely medical treatment. (Compl. ¶ 40.) For example, Woods argues inadequate staffing, training, and procedures at the Lake County Jail caused medical staff to act in an untimely manner. (*Id.* ¶ 40(c).) These complaints are precisely the sort of jail-related policy authority Illinois grants its sheriffs. *See Moy*, 159 Ill.2d at 526–27, 640 N.E.2d at 929.[5] Thus, Lake County is correct that it is not the proper policymaker against whom Woods should level his complaint. Instead, Woods' arguments are properly addressed to the Sheriff of Lake County.

---

[5] The Sheriff is not a defendant in this action, therefore Lake County is also not required to remain a party to this suit in order to indemnify the Sheriff, as has been the case in several other suits. *See Ramirez*, 2010 WL 1325618, at *4.

## CONCLUSION

As a result, we grant Defendant Lake County's motion to dismiss for failure to state a claim without prejudice. We grant Plaintiff leave to amend his complaint if he so chooses to plead his *Monell* claim against Lake County.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: January 27, 2020
Chicago, Illinois